UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

-------------------------------X

EDDIE SIMMS,

        Petitioner,

VS.

UNITED STATES OF AMERICA,

        Respondent.

-------------------------------X

CASE NO. 00-CR-00032

DISTRICT COURT JUDGE
YVETTE KANE

FILED
HARRISBURG, PA

OCT 0 6 2005

MARY E. D'ANDREA, CLERK
Per_____

MOTION FOR LEAVE TO AMEND PETITIONER'S TITLE
28 U.S.C. § 2255 TO VACATE, AND SET ASIDE, OR
CORRECT SENTENCE PURSUANT TO FED.
R. CIV. P. 15(a)

INTRODUCTION

NOW COMES the petitioner EDDIE SIMMS, (hereinafter "PETITIONER")
and proceeding **pro-se** and respectfully moves this Honorable Court
in the interest of justice and request that this Honorable Court
**"GRANT"** the petitioner Motion for Leave to Amend Petitioner's
Title 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence,
Pursuant to Fed. R. Civ. P. 15(a), and also, the petitioner
filed his initial brief on July 29, 2004. Grant this motion for
the reasons that follow:

(1) That the Government decision not to file a Rule
35(b) Motion lacked rational relationship to legitimate government
interest.

(2) The District Court failed to allow the petitioner

(1)

to personally speak or present any information to mitigate the sentence pursuant to Fed. R. Crim. P. 32(i)(4)(A)(ii), or 32 (c)(3)(C).

(3) Counsel Mr. Lori J. Ulrich was ineffective when the petitioner requested and informed counsel to file a direct appeal.

(4) Counsel Ms. J. Ulrich was ineffective for failure to file a notice of appeal.

(5) Counsel Ms. Lori J. Ulrich, was ineffective for failure to object to the Presentencing Report.

## RULE 15(a) FEDERAL RULE OF CIVIL PROCEDURE

**(a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is on to which no responsive pleading is permitted and the action has not been placed upon the trial calender, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, which ever period may be the longer, unless the court otherwise orders.

In **Shane v. Fauver,** 213 F.3d 113 (3rd Cir. 2000); this Honorable Court stated; Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading "once as a matter of course

at any time before a responsive pleadings is served." A motion to dismiss for failure to state a claim must be made "before pleading is permitted." Fed. R. Civ. P. 12(b). Thus, in the typical case in which a defendant asserts the defense of failure to state a by motion, the plaintiff may amend the complaint once" as a matter course" without leave of court. See 2 James Wm. Moore et.at., Moore's Federal Pratice § 12.35[5], at 12-76 (3d ed.1999)(quoting Fed. R. Civ. P. 15(a)). After amending once or after an answer has been filed, the plaintiff may amend only with leave of Court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has instructed that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." **Forman v. Davis,** 371 U.S. 178 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility., **In re Burlington Coat Factory,** see. Litig., 114 F.3d 1401, 1434 (3d Cir.1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434. In assessing "futility", the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id. 3 Moore's Federal Pratice, supra. § 15.15 [3],

at 15-47 to 48 (3d ed.2000). Accordingly, if a claim is vulnerable
to dismissal under Rule 12(b)(6), but the plaintiff moves to
amend leave to amend generally must be granted unless the amendment
would not cure the deficiency.

## PRO-SE LITIGANT STANDARD OF REVIEW

In **Alvarado v. Litscher,** 267 F.3d 648 (7th Cir.2001), allegations
of a pro-se complaint are held "to less stringent standards than
formal pleading drafted by lawyers." **Haines v. Kerner,** 404 U.S.
519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam). Accordingly
pro-se complaints are liberally construed. See **Wilson v. Civil
Town of Clayton, Ind.,** 839 F.2d 375, 378 (7th Cir.1988). In
**McDowell v. Delaware State Police,** 88 F.3d 188 (3rd Cir.1996);
this Court stated, we cannot affirm the dismissal unless we can
"say with assurance that under the allegation of the pro-se
complaint, which we hold to less stringent standards than formal
pleadings drafted by lawyers, it appears beyond doubt that the
plaintiff can prove no set of facts in supports of his claim
which would entitle him to relief." haines, 404 U.S. 519 Id.
(quoting **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99 102,
L.Ed.2d 80 (1975)). See also, **Urrutia v. Harrisburg County
Police Dept.,** 91 F.3d 451 (3rd Cir.1996); **Gibbs Roman,** 116 F.3d
83 (3rd Cir.1997).

## INEFFECTIVE ASSISTANCE

In **United States v. Day,** 969 F.2d 39 (3rd Cir.1992); this Court
stated; the principles governing ineffective assistance of counsel
claims are familiar, and we need not belabor them here. A defendant
has a Sixth Amendment right not just to counsel, but to "reasonably
effective assistance" of counsel. **Stricland v. Washington,** 466 U.S.
668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To gain
relief for a violation of this right, a defendant must show both
unprofessional conduct and, in most cases, prejudice as a result.
More precisely, the claimant must show that (1) his or her attorney's
performance was, under all the circumstances, unreasonable under
prevailing professional norms, see id. at 687-91, 104 S.Ct. at
2064-66, and, unless prejudice is presumed, that (2) there is
a reasonable probability that, but for counsel's unprofessional
errors, the result would have been different". Id. at 694, 104,
S.Ct. at 2068." A reasonable probability is a probability sufficient
to undermine confidence in the outcome." Id.

## CAUSE AND PREJUDICE

The petitioner was not allowed to raise some of these claims,
because the petitioner received ineffective assistance of counsel.
For the proposition of the cause and prejudice standard, the
petitioner will rely on **United States v. Kissick,** 69 F.3d 1048
(10th Cir.1995); Nevertheless, as the government pursue this issue

in a Section 2255 proceeding if he can show cause for his failure to raise it and prejudice resulting from that failure. **United States v. Cook,** 45 F.3d 388, 392 (10th Cir.1995). Mr. Kissick attempts to establish cause by arguing that his failure to challenge the Florida conviction resulted from his attorney's neglect. In fact, a defendant may establish cause for failing to raise a claim by demonstrating that he received ineffective assistance of counsel. Id. (citing **Murray v. Carrier,** 477 U.S. 478, 488, 106 S.Ct 2639, 2645, 91 L.Ed.2d 397 91986)). In order to establish ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was constitutionally deficient; and (2) that this deficient performance was prejidicial. Id. (citing **Strickland v. Washington,** 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Under the first prong of the Strickland test, a defendant must establish that counsel made errors so serious that [he] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2964. Under this standard, "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. The court must avoid the "distorting effects of hindsight," and the defendant must overcome the presumption that the attorney's action constituted sound trial strategy. Id. nevertheless, a defendant is entitled to "the exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney." **United States v. Burney.** 756 F.2d 787, 790 (10th Cir.2985)(quoting **Dyer v. Crisp,** 613 F.2d 275, 278

(10th Cir.)(en banc), cert. denied, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980))(alteration in original). Under the second prong of the Stricklnad test, a defendant must establish that " "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. However, a court may not set aside a conviction or a sentence solely be cause the outcome would have been different absent counsel's deficient performance. **Lockhart. v. Fretwell,** 506 U.S. 364, 113 S.Ct. 838, 842-43, 122 L.Ed.2d 180 (1993). Instead, in order to establish the required prejudice, a defendant must demonstrate that counsel's deficient performance rendered the proceeding "Fundamentally unfair or unreliable." Id. at 113 S.Ct. at 842. We have applied the Strickland test in various circumstances to conclude that an attorney's performance was constitutionally deficient and prejudicial. In Cook, we held that an attorney who had failed to raise an issue on appeal that was (in Judge Easterbrook's colorful parlance) " a dead-bang winner" had provided ineffective assistance under Strickland. Cook, 45 F.3d at 395 (quoting **Page v. United States,** 884 F.2d 300, 302 (7th Cir.1989)); see also **Banks v. Reynolds,** 54 F.3d 1508, 1515 16 (10th Cir.1995)(holding that attorney who had failed to raise clearly meritorious issues on appeal provided ineffective assistance). Similarly, in **Baker v. Kaiser,** 929 F.2d 1495, 1499-1500 (10th Cir. 1991), we concluded that the representation provided by an attorney

who failed to ascertain whether a defendant wanted to appeal a
conviction or who failed to discuss the merits of the appeal with
the defendant was constitutionally deficient. Finally, in **Osborn
v. Shillinger,** 861 F.2d 612, 626-31 (10th Cir.1988), we affirmed
a district court's finding that an attorney who failed to discover
mitigating evidence to present at a capital sentencing proceeding
ineffective assistance under Strickland.


I.   THAT THE GOVERNMENT DECISION NOT TO FILE A RULE 35(b)
     MOTION LACKED RATIONAL RELATIONSHIP TO LEGITIMATE
                    GOVERNMENT INTEREST

     A.

          For the proposition of this issue, the petitioner will
rely on the petitioner's plea agreement. See **(EXHIBIT 1);** The
petitioner plead guilty to the superseding indictment and stated
that he would cooperate with the Government. In fact, the petitioner's
hold plea agreement was based on his cooperation with the Government.
The record show that the petitioner fulfilled his obligations
in accordance with the plea agreement and provided the Government
with information in the prosecution of other individuals, and
the Government at sentencing would move this Honorable Court for
a departure and the Government did not do so. This promise by
the Government was not complete after the petitioner provided
information in the prosecution of others, and the petitioner was
waiting at sentencing for the Government to move for the departure

in compliance with Rule 35(b). The plea agreement states at 8 and
20:

> 20. The Defendant agrees to cooperate fully with the
> with the United States. The defendant understands
> and agrees that complete and truthful cooperation
> is a material condition of this agreement.
> Cooperation shall include providing all information
> known to the defendant regarding any criminal
> activity, including but not limited to the offenses
> described in this agreement. Cooperation will also
> include complying with all reasonable instructions
> from the United States, submitting to interviews
> by investigators and attorneys at such reasonable
> times and places to be determined by counsel for
> the United States and to testify fully and truthfully
> before any grand juries, hearings, trials or any
> other proceedings where the defendant's testimony
> is deemed by the United States to be relevant.
> See (**EXHIBIT 1**)

And also, the Sentencing Transcripts states at 4 and 5:

> 4.
>
> MR. BEHE: YES YOUR HONOR, I SIMPLY WANTED TO ADVISE

MR. SIMMS THAT THE AGREEMENT THAT'S BEEN REACHED IN THIS MATTER

WAS SORT OF A PLEA AGREEMENT WHERE YOU GOT YOUR BENEFIT UP FRONT

AS OPPOSED TO OTHER CASES WHERE WE WOULD COME IN WITH A MOTION FOR

A GUIDELINE DEPARTURE AT THIS TIME. BUT THAT'S NOT THE END OF THE

MATTER, BECAUSE THE FEDERAL RULES OF CRIMINAL PROCEDURE ALLOW THE

UNITED STATES TO COME BACK INTO COURT WITHIN A YEAR PURSUANT TO

RULE 35 AND ASK THE COURT TO DEPART BELOW THE SENTENCE OR TO GIVE

YOU A REDUCED SENTENCE IF YOU PROVIDE SUBSTANTIAL ASSISTANCE.

AND WITHOUT DETAILING ANYTHING, THERE ARE A NUMBER OF MATTERS

THAT WERE RAISED DURING OUR DISCUSSIONS AND FROM OTHER INVESTIGATIONS
THAT WE THINK YOU MAY BE ABLE TO ASSIST US ON, AND IF ANYTHING
COMES OF THOSE MATTERS, WE WOULD BE ABLE TO COME BACK BEFORE THE
COURT. SO I WOULD ASK YOU TO PLEASE KEEP THAT IN MIND AND KEEP
IN TOUCH WITH YOUR LAWYER SO THAT WE CAN SEE WHETHER OR NOT THAT
WOULD BE A  POSSIBILITY. DO YOU UNDERSTAND? See **(EXHIBIT 2)**

The record is replete with information that the petitioner-provided
substantial assistance in the prosecution of others, and the
Government did not fulfill it's obligations, to move this Honorable
Court for a downward departure at the petitioner's sentencing
stage. Therefore, the petitioner request that this Honorable
Court move the Government to enforce it's obligations to comply
with the plea agreement.

## PREJUDICE:

          The petitioner is suffering a substantial amount
of prejudice as a result of the Government not complying and
enforcing it's obligations to move the Court for a downward
departure. The petitioner was sentenced to 120 months and 2 years
of supervised release. This sentence also reflects a Base Offense
Level of 32 Criminal History of IV. The petitioner is suffering
36 months of prejudice as a result of the Government not moving
for a departure under Rule 35(b). This 36 months of prejudice

from the 120 months the petitioner received would have yielded a
sentence of 84 months, and a Base Offense Level of 25. The prejudice
the petitioner is suffering is quantifiable.

## ARGUMENT

For the proposition of this argument, the petitioner will rely
on **United States v. Wilson,** 390 F.3d 1003 (7th Cir.2004); in which
this Court stated; On appeal, Wilson maintains that, apart from
the terms of his plea agreement, he is entitled to relief under
Wade, which sets forth two limitations on a prosecutor's refusal
to file a substantial assistance motion. First, the prosecutor's
decision must have some rational relationship to a legitimate
government interest. See Wade, 504 U.S. at 186, 112 S.Ct. 1840;
**Bischel v. United States** , 32 F.3d 259, 263 (7th Cir.1994); see
also **United States v. Duncan,** 242 F.3d 940, 950 (10th Cir.2001).
Additionally, the decision may not be based on an unconstitutional
motive, such as race or religion. Wade, 504 U.S. at 185-86, 112
S.Ct. 1840; Bischel, 32 F.3d at 263. Although Wilson claims here
that the government's decision ran afoul of both limitations, he
does not develop his assertion that the government harbored an
unconstitutional motive, i.e., impeding his right of access to
the courts. See **United States v. Holm,** 326 F.3d 872, 877 (7th Cir.
2003)(even arguments raising constitutional claims are waived
when undeveloped and unsupported by pertinent legal authority).

We thus focus on Wilson's contention that the government's refusal to file a Rule 35(b) motion lacked a rational relationship to some legitimate government objective. Wilson argues that, in light of the district court's conclusion that each of the government's asserted reasons was pretextual, the refusal to file a Rule 35(b) motion on his behalf could not have been rationally related to a legitimate government end. We agree. instead  of acknowledging the district court's factual findings about its motive, the government simply reasserts the reasons the district court rejected (it does abandon reliance on Wilson's alleged failure to pay his fine and special assessment). Nowhere does the government argue that the district court clearly erred by disbelieving its asserted reasons for refusing to file a Rule 35(b) motion. See **United States v. Butler,** 272 F.3d 683, 686 (4th Cir.2001). Thus, if we are to review anything at all, we would consider the reason that the district court found was really motivating the government conduct: the government was using its discretion over the filing of a Rule 35(b) motion in this case to force Wilson to abandon his effort to redress the extra two years he spent in prison on another case because of apparent negligence by government employees. The government avoids directly defending this reason, and instead urges us to reject Anzalone and conclude that a reason wholly unrelated to the defendant's cooperation is one that is rationally related to a legitimate government objective.

In Anzalone the Eighth Circuit held that "the government cannot
base its [Rule 35(b)] decision on factors other that the substantial
assistance provided by the defendant." Anzalone, 148 F.3d at 941
(internal quotations omitted). The court reasoned that since the
defendant admittedly had provided substantial assistance the
government could not refuse to file a departure motion on the
ground that he was suspected of subsequently possessing and using
a controlled substance a reason "unrelated to the quality of his
assistance investigating and prosecuting other offenders." Id.
The Fourth Circuit, however, has expressly rejected Anzalone
as inconsistent with Wade. Se Butler, 272 f.3d at 687. In Butler
the government refused to file a downward departure motion under
§ 5K1.1 after receiving word that the defendant, before sentencing
had threatened to kill one of his codefendants, along with the
codefendant's family and his dogs. Id. at 685. The panel in
Butler rejected Butler's contention that his threats were unrelated
to the "type or quality of assistance he rendered." Id. at 687.
But the court went further and concluded that even if it were
somehow the case that Butler's threats were not rationally related
to the assistance he provided, that is not the relevant inquiry
under Wade." Id. Thus, the court concluded that the government's
refusal to file could be defended with reference to the general
governmental interest in "deterring a defendant from threatening
the life of a codefendant." Id. The other case to flatly reject
Anzalone, **United States v. Nealy,** 232 F.3d 825 (11th Cir.2000),

is unhelpful because it appears to have disregarded the Wade rational basis test altogether, limiting the defendant's recourse to those instances when the government harbors an "unconstitutional motive" for refusing to file a substantial assistance motion.

II.          **THE DISTRICT COURT FAILED TO ALLOW THE PETITIONER TO PERSONALLY SPEAK OR PRESENT ANY INFORMATION TO MITIGATE THE SENTENCE PURSUANT TO FED. R. CRIM. P. 32(i)(4)(A)(ii) OR 32(c)(3)(C)**

   **B.**

        The petitioner was sentenced in this Honorable Court on October 12, 2000, and received a sentence of one hundred and twenty months (120) respectively. At the sentencing stage of petitioner's proceeding, this Honorable Court did not comply with the Fed. Rules, of Crim. P. 32(i)(4)(A)(ii) or 32(c)(3)(C). During these proceedings, the petitioner never had the opportunity to address the court to see if the petitioner had nay statement or to make or information to present in mitigation of his sentence, in which the petitioner would have liked to address the court. In fact, the record show that petitioner's counsel spoke on the petitioner's behalf and stated:

        THE COURT: ALL RIGHT, IS THERE ANYTHING YOU WANT TO PRESENT ON BEHALF OF MR. SIMMS?

MRS. ULRICH: JUST BRIEFLY, YOU HONOR, BECAUSE WE UNDERSTAND THE SENTENCE HAS TO BE 120 MONTHS. HE DID THE RIGHT THING AND COOPERATED, AND THAT'S WHY HE IS FACING THE SENTENCE OF 10 YEARS. I THINK HE'S MADE A COMMITMENT TO HIMSELF AND HIS FAMILY THAT THIS IS IT, AND HE WANTS TO TURN HIS LIFE AROUND. I JUST WANTED TO MENTION THAT HIS GIRLFRIEND CRYSTAL PRUNTY IS IN THE COURTROOM. SHE'S BEEN VERY SUPPORTIVE, AND HIS MOTHER JUST FOUND OUT THIS MORNING THAT HIS SENTENCING WAS TODAY, AND SHE WAS A LITTLE UPSET ABOUT THAT, BUT OTHERWISE SHE WOULD HAVE BEEN HERE. SO HE DOES HAVE A VERY SUPPORTIVE FAMILY. I DID WANT TO MENTION THAT TO THE COURT. SEE **(EXHIBIT 2).**

The petitioner's counsel made these statements on the petitioner's behalf and the petitioner never address the Court on his on behalf. The record also shows that, the Court before the imposition of the sentence did not allow the petitioner a right to speak in mitigation prior to sentencing. The sentencing transcripts at 5 states:

THE COURT: ALL RIGHT, MR. SIMMS, IT SOUNDS LIKE YOU HAVE MADE A SINCERE ATTEMPT HERE TO RIGHT AT LEAST SOME OF THE WRONGS THAT ARE RACKING UP ON YOUR SHEET, AND MABYE THIS IS A TURN AROUND TIME FOR YOU TO GO FORWARD AND HAVE A GOOD LIKE WITH YOUR FAMILY.

THE DEFENDANT, YES:

THE COURT: PURSUANT TO THE SENTENCING REFORM ACT OF 1984
IT IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT EDDIE SIMMS
IS HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISON TO
BE IMPRISONED FOR A TERM OF 120 MONTHS. THIS TERM CONSISTS OF
TERMS OF 60 MONTHS ON EACH OF COUNTS 1 AND 2 TO BE SERVED CONSECUTIVELY.
THE COURT FINDS THAT THE DEFENDANT HAS AN ABILITY TO PAY A FINE
BELOW THE APPLICABLE GUIDELINES RANGE. ACCORDINGLY IT IS FURTHER
ORDERED THAT THE DEFENDANT PAY TO THE UNITED STATES THE SUM OF
$ 700, CONSISTING OF A FINE OF $ 500 ON COUNT 1 AND A SPECIAL
ASSESSMENT OF $ 100 ON EACH COUNT. THE FINE AND ASSESSMENTS ARE
DUE IMMEDIATELY, SHALL BE PAID THROUGH THE CLERK OF COURT AND
PAYABLE DURING THE PERIOD OF INCARCERATION WITH ANY BALANCE TO
BE PAID WITHIN 2 YEARS OF RELEASE FROM CUSTODY. UPON RELEASE
FROM IMPRISONMENT THE DEFENDANT SHALL BE PLACED ON SUPERVISED
RELEASE FOR A TERM OF 2 YEARS ON EACH COUNT TO BE SERVED CONCURRENTLY.
WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU OF
PRISONS THE DEFENDANT SHALL REPORT IN PERSON TO THE PROBATION OFFICE
IN THE DISTRICT TO WHICH HE IS RELEASED. AS A CONDITION OF
SUPERVISION THE DEFENDANT SHALL SUBMIT TO A DRUG TEST WITHIN 15
DAYS OF RELEASE FROM CUSTODY AND AT LEAST TWO PERIODIC DRUG TESTS
THEREAFTER.

It is undisputed that the record show that the petitioner did not have the opportunity to speak and present mitigation information in his behalf and this is supported by the record, that this Honorable Court violated Rule 32(i)(4)(A)(ii) or 32(c)(3)(C) of the Fed. Rules, of Crim. P. . Therefore, the petitioner request to be resentenced by this Honorable Court to allow the petitioner to speak and present mitigating evidence and information on my behalf.

## PREJUDICE:

The prejudice the petitioner is suffering is that, had the petitioner been allowed the opportunity to speak and present mitigating evidence on my behalf, the petitioner could have presented to the sentencing court that:

(1) The Government failed to give the petitioner a Rule 35(b) motion when the record clearly show that the Government moved this Honorable Court for a motion and withdraw it and told the petitioner to wait until later, and the petitioner provided information.

(2) The petitioner would have wanted to address the court to depart for extraordinary family circumstances.

(3) The petitioner would have wanted to address the court on the drug quantity when counsel failed to object to the PSR.

(4) The petitioner wanted to address the court on why counsel did not make any objection to the PSR, and preserve those tights for appeal.

(5) Address the court that, counsel Mrs. Lori J. Ulrich, was supposed to file a notice of appeal after this Honorable Court said the petitioner had a right to appeal.

This is a significant amount of prejudice because the petitioner did not have the opportunity to speak and present mitigating evidence on the petitioner's on behalf, at the sentencing stage in this Honorable Court.

## ARGUMENT

The Federal Rules of Criminal Procedure Rule 32(i)(4)(A)(ii) states:

> **(4) Opportunity to Speak.**
>
> **(A) By a Party. Before imposing sentence, the court must:**
>
> **(i)** Provide the defendant's attorney an opportunity to speak on the defendant's behalf;
>
> **(ii)** address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and
>
> **(iii)** provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney. See **(Fed. Rules, Crim.P. 32(i)(4)(A)(ii)).**

For the proposition of this argument, the petitioner will rely on **United States v. Adams,** 252 F.3d 276 (3rd Cir.2001); where this Court stated; as an initial matter, we note that parties agree that the District Court failed to comply with Rule 32(c)(3)(C) which safeguards the defendant's right of allocution. The Rule states that, prior to imposing sentence, the district court must "address the defendant personally and determine whether the

defendant wishes to make a statement and to present any information in mitigation of the sentence". "The District Court was obviously aware of Adams right of allocution, and specifically asked Admas counsel: Would your client like to exercise his right of allocution? However, the Supreme Court has held that this query, directed towards counsel, does not satisfy the requirement thatthe district court personally address the defendant himself. E.g., **Green v. United States,** 365 U.D. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)(plurality opinion); id. at 307, 81 S.Ct. 653 (Black J., dissenting); See also **United States v. Allegrucci,** 299 F.2d 811 815 (3d Cir.1962). Accordingly, the District Court erred, and thus we are squarely presented  with the question whether a violation of the right of allocution contained in Rule 32(c)(3)(C) necessitates a remand for resentencing. In addressing the issue before us, we do not write on a clean slate. At the same time, the writing that is currently on the slate is not particularly clear: there are old markings still visible along with the new ones, and we will attempt to reconcile the two. A historical perspective is in order. in 1961 and 1962, the Supreme Court issued three opinions  that characterized the right of allocution as an important sageguard that should be strictly enforced according to its terms. in **Green v. United States,** 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), the Justices could not have expressed more clearly their view that the right of allocution under Rule 32 is highly respected. At the conclusion of sentencing, the trial

judge had asked, "Did you want to say something?" Id. at 302,
81 S.Ct. 653. It was unclear from the record whether this question
had been posed to the defendant, or merely to defense counsel. Id.
at 304-05, 81 S.Ct. 653. Given this uncertainty, a plurality of
the Court determined that the defendant had failed to meet his
burden of showing that he was not accorded his right of allocution.
Id. at 305, 81 S.Ct. 653. However, eight of the Justices agreed
that, in the future, trial judges should "unambiguously address
themselves to the defendant: and thus "leave no room for doubt
that the defendant has been issued a personal invitation to speak
prior to sentencing." Id.; id at 309, 81 S.Ct. 653 (Black, J.
dissenting). See also, **United States v. Myers,** 150 F.3d 459 (5th
Cir.1998); **United States v. Gunning,** 401 F.3d 1145 (9th Cir.2005).

III.  **COUNSEL MRS. LORI J. ULRICH WAS INEFFECTIVE
WHEN THE PETITIONER REQUESTED AND INFORMED
TO FILE A DIRECT APPEAL**

C.

The petitioner at the time of sentencing requested
Mrs. Lori J. Ultich, petitioner's sentencing counsel to file a
appeal on petitioner's behalf after the sentencing judge stated
the petitioner could file a appeal. The petitioner emphatically
requested Mrs. Ulrich, to file an appeal on petitioner behalf,
because:

(1) The Government did not comply with it's obligations
to the plea agreement by not filing and moving the

district court to depart from petitioner's sentence.

(2) That the Probation Department gave the petitioner an increase amount of drug which the petitioner felt he was not responsible for.

(3) That the petitioner's drug was not crack cocaine but cocaine base under the U.S.S.G. 487 Amendment.

(4) The petitioner requested counsel to object to the drug quantity and counsel refused.

(5) That the petitioner emphatically requested counsel Mrs. Ulrich, to raise extraordinary family circumstances since the petitioner had strong family support and ties and counsel refused.

The record show that, at the sentencing, the district court judge stated that the petitioner had the right to appeal under due process of the law. See **(EXHIBIT 2)**. The record also show that Mrs. Ulrich, did not even file a notice of appeal after the district court judge instructed that the petitioner had that right to appeal his sentence. This unprofessionalism from Mrs. Lori J. Ulrich, not filing a appeal on the petitioner behalf violated the petitioner Sixth Amendment rights and the petitioner received ineffective assistance of counsel, because the petitioner emphatically told Mrs. Ultich to file a appeal on the petitioner's behalf. The petitioner requested Mrs. Lori J. Ulrich, to file a appeal and she refused indicating that the petitioner had no issues to raise because the petitioner plead guilty to counts one and two. This deficient performance by Mrs. Ulrich, for not filing a direct appeal after the sentencing judge instructed that the petitioner had the right to appeal and the petitioner, requested counsel to appeal prejudice the petitioner.

**PREJUDICE:**

        The prejudice the petitioner has received by counsel not filing a appeal on the petitioner behalf violated the petitioner's Sixth Amendment rights to effective assistance of counsel and prejudice the petitioner because the petitioner had valid issues to raise to the appeal's court for review. <u>Prejudice is presumed</u>.

**ARGUMENT**

For the proposition of this argument the petitioner will rely on <u>**Ludwig v. United States**</u>, 162 F.3d 456 (6th Cir.1998); in which this Court stated; Finally, petitioner contends that he received constitutionally ineffective assistance of counsel in several respects. To make out an ineffective assistance of counsel claim a petitioner must demonstrate deficient performance and prejudice. <u>**Strickland v. Washington,**</u> 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. at 686, 104 S.Ct. 2052. In the context of a guilty plea, the Supreme Court has assessed an ineffective assistance claim by defining prejudice as a showing that a reasonable probability exists that

gut for counsel's errors, defendant would not have pleaded guilty.
**Hill v. Lockheart,** 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d
203 (1985). The district court rejected petitioner's claim of
ineffective assistance. it stated that "[t]he fact that Ludwig
has never claimed innocence creates the presumption that his attorney's
performance did not create the prejudice required by Strickland."
The district court went on to find that petitioner was competent
to enter a plea and, by extension, counsel was not ineffective
for not pursuing the competency issue. The court did not address
petitioner's claim that counsel failed to file a notice of appeal.
We agree that petitioner's ineffective assistance claim fails in
most respects. First, as already discussed, many of the issues
that counsel failed to pursue were without merit. petitioner was
competent to understand and to elect to enter a peal; counsel
obtained petitioner's consent to waive the provisions of the Speedy
Trial Act; and the video tape does not exonerate petitioner of
the conspiracy charge. Counsel was not required to raise meritless
arguments to avoid a charge of ineffective assistance of counsel.
However, with respect to counsel's failure to file a notice of
appeal, a judgment, in disregard of the defendant's request, is
ineffective assistance of counsel regardless of whether the appeal
would have been successful or not. See **Castellanos v. United States,**
26 F.3d 717, 719 (7th Cir.1994); **United States v. Peak,** 992 F.2d
39, 42 (4th Cir.1993); **United States v. Horodner,** 993 F.2d 191,
195 (9th Cir.1993); **Bonneau v. United States,** 961 F.2d 17, 23
(1st Cir.1992); **United States v. Davis,** F.2d 554, 557 (10th Cir.1991);

**Williams v. Lockhart,** 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We
agree with those courts and hold that the failure to perfect a
direct appeal, in derogation of defendant's actual request, is
a per se violation of the Sixth Amendment. In explaining why the
defendants in Castellanos were denied effective assistance of
counsel because their counsel failed to perfect an appeal, Judge
Easterbrook observed:

> Neither [of the defendants] has had legal
> representation when seeking relief. No one
> has looked at the record with an avocates
> eye. Although the district judges conscientiously
> tried to imagine what a lawyer might have
> done, an advocate often finds things that an
> umpire misses especially when the umpire is
> asking whether the court of appeals was likely
> to reverse his own decision. Few district
> judges believe that their decisions are
> likely to be overturned; if they believed
> that, they would have done things differently
> in the first place.

Castellanos, 26 F.3d at 718. We agree with Judge Easterbrook
that application of the Strickland prejudice component is inappropriate
because it means that the defendant never receives the benefit
of a lawyer's services in constructing potential appellate arguments.
Id. Prejudice must be presumed. A lawyer's failure to file a
requested appeal at the behest of a defendant is particularly
problematic because it does not merely deprive the defendant of
effective assistance of counsel, it deprives him of the assistance
of any counsel altogether. Thus, the failure to perfect a direct
appeal when requested by the defendant violates the Sixth Amendment

without regard to the probability of success on appeal. We
emphasize, of course, that a defendant's actual "request" is
still a critical element in the Sixth Amendment analysis. The
Constitution does not require lawyers to advise their clients of
the right to appeal. Rather, the Constitution is only implicated
when a defendant actually request an appeal, and his counsel
disregards the request. **Morales. v. United States**, 143 F.3d 94
97 (2d Cir.1998); Castellanos, 26 F.3d at 719. **Solis v. United
States,** 252 F.3d 289 (3rd Cir.2001).

IV.          COUNSEL MRS. J. ULRICH WAS INEFFECTIVE FOR
             FAILURE TO FILE A NOTICE OF APPEAL


D.

(1) The petitioner was sentenced on October 12, 2000.
After the petitioner initial sentencing, the district court judge
stated that the petitioner had the right to appeal his sentence.
See **(EXHIBIT 2)**

(2) The petitioner requested to Mrs. Lori, J. Ulrich,
to file a notice of appeal because the petitioner wanted to raise
some issues on direct appeal for the appeals court to review.

(3) Counsel Mrs. Ulrich, stated that the petitioner had
no issues to raise on direct appeal.

(4) Counsel Mrs. Lori J. Ulrich, stated she refused to
file a direct appeal on the petitioner behalf because she stated,
("that's why i did not object to the PSR").

(5) The petitioner emphatically requested counsel Mrs.
Ulrich, to file a direct appeal.

(6) There is no indication throughout the petitioner
proceedings that Mrs. Ulrich filed a notice of appeal on the
petitioner's behalf after the petitioner requested her to do so.

(7) There is no indication in petitioner plea agreement or
plea colloquy hearing that the petitioner waived his right to
appeal his sentence. See **(EXHIBIT 1)**

(8) There is no indication from the record that the petitioner refused to have a notice of appeal filed on his behalf or a direct appeal.

If this Honorable Court would review the record in petitioner's case, this Honorable Court will agree that petitioner received ineffective assistance of counsel after the petitioner requested counsel Mrs. Lori J. Ulrich, to file a notice of appeal after this Honorable Court instructed counsel and the petitioner that the petitioner had a right to appeal his sentence.

## PREJUDICE:

The prejudice the petitioner is suffering as a result of counsel Mrs. Ulrich, not filing a notice of appeal is that, the petitioner never had the opportunity to file issues on his behalf. The petitioner wanted to raise:

(1) Drug quantity that was given to the petitioner by the Probation Department.

(2) Extraordinary Family Circumstances that's supported by the record.

(3) Obligation by the Government not to file a Rule 35 motion on petitioner behalf.

The petitioner received ineffective assistance of counsel as a of counsel not filing a notice of appeal on the petitioner's behalf, and the petitioner was prejudice as a result of counsel Mrs. Ulrich deriliction.

## ARGUMENT

For the proposition of the argument the petitioner will rely on **United States v. Stearns,** 68 F.3d 328 (9th Cir.1995); because the petitioner at this time was unable to find Third Circuit Law, but this case will substantiate the petitioner claim. The Ninth Circuit stated, because Stearn's claim is that counsel was ineffective, we start with the familiar requirement that he must show: (1) "that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment, and (2) "that the deficient performance prejudiced the defense." **Strickland v. Washington,** 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We have previously applied those elements to a claim that counsel improperly failed to file a notice of appeal. In **Lozada v. Deeds,** 964 F,2d 956 (9th Cir.1992), the petitioner had been convicted in the state court of Navada. He sought habeas corpus relief in which he claimed that counsel had not filed a notice of appeal for him. We declared:

> We hold that prejudice is presumed under
> Strickland if it is established that counsel's
> failure to file a notice of appeal was without
> the petitioner's consent. We remand for a
> determination of whether the failure to file
> the notice of appeal was without Lozada's
> consent. If that is the case, petitioner
> is entitled to relief by way of a conditional
> writ.

Id. at 958-59 (emphasis added). we returned to the issue in Horodner, where the petitioner had been convicted after a trial in the United States district court. His appeal was dismissed

because the notice of appeal was filed late. 993 F.2d at 195.
We said that whether the failure to file a timely appeal constituted
ineffective assistance of counsel depended upon whether Horodner
had "consented to abandonment of his appeal." Id. we went on to
say, "unless Horodner consented to the abandonment of his notice
of appeal resulted in ineffective assistance of counsel which
prejudiced Horodner in violation of his Sixth Amendment rights."
That authority would automatically demand reversal in this case,
but for one distinction. The judgment in this case was entered
after a plea rather than after a trial. That, however, is a
distinction without a difference. We wee no principled way to
distinguish a failure to file a notice of appeal after a judgment
following a plea from a failure to file after a judgment following
a trial. It is true that in the latter situation there may well
be more issues to raise on appeal, but that is a factor of no
real importance. Similarly, it might be more obvious to counsel
that a defendant may well wish to appeal after a trial, but given
the inspissate brumes generated by the guidelines, counsel can
hardly assume that a defendant who has pled guilty does not
wish to appeal his sentence. No doubt the situation could be
different if the plea agreement itself waived the right to appeal.
Suffice it to say that is not this case. Other courts have reached
the conclusion that a failure to appeal after a plea does, indeed,
result in ineffective assistance of counsel, without a specific
showing of prejudice. See **Castellanos v. United States,** 26 F.3d

717, 719 (7th Cir.1994); __United States v. Peak,__ 992 F.2d 39, 42
(4th Cir.1993). The law applied in those cases was slightly
different from the law of this circuit because in those cases
the petitioner had requested that an appeal be filed, and counsel
had not followed the request. Castellanos, at least, put mush
weight on the need for that request. 26 F.3d at 719. In so doing
it relied on cases where a request was made after a trial, and
stated that a "'[r]equest' is an important ingredient in this
formula." Id.


## V. COUNSEL MRS. J. ULRICH WAS INEFFECTIVE FOR FAILURE TO OBJECT TO THE PRESENTENCE INVESTIGATION REPORT

**E.**

    The petitioner was sentenced to a 120 months and at the
sentencing, the petitioner 's counsel Mrs. Lori J. Ulrich, did
not make anyyobjection to the Presentencing Report (hereinafter
"PSR"). the petitioner plead guilty to a Two Count Superseding
Indictment, and a maximum for these two courts where 5 years. See
**(EXHIBIT 3 PSR at 7-39)** which states:

> **39. Statutory Provisions:** On each of Counts I and
> II, the maximum term of imprisonment is Five (5)
> years 18 U.S.C. § 1952.

The record is clear that the petitioner could only receive a
maximum term of imprisonment of 5 years on each count. After the

petitioner's plea agreement. The petitioner plea agreement indicated that if the petitioner would plead guilty and cooperate with the Government and receive a downward departure from his sentence. The record is clear that the petitioner did not receive a downward departure. Mrs. Ulrich, did not object to this failure to move the Government to file a motion and this would have took the petitioner sentence lower because the maximum the petitioner could have received was 120 months for both counts. The petitioner informed counsel Mrs. Ulrich to object but she refused. The record show, that the petitioner could only receive 120 months for both counts and counsel failed to object to the PSR prejudiced the petitioner because the petitioner could have received the benefit of three point for acceptance of responsibility. The record shows in the PSR that the petitioner's Base Offense Level was 32 Criminal History of IV. The record also, show that the petitioner could only receive 120 months sentence maximum. This Honorable Court sentenced the petitioner to 120 months which was the maximum under 1952(a)(3) that the petitioner could receive. if counsel Mrs. Ulrich would have objected to the PSR the petitioner would have received a sentence below 120 months. Also, the record show that the plea colloquy hearing transcripts show at page 7 and 8:

MR. BEHE: YES, YOUR HONOR. IN EXCHANGE FOR MR. SIMMS AGREEING TO WAIVE INDICTMENT AND PLEAD GUILTY TO THIS TWO COUNT SUPERSEDING INFORMATION, THE UNITED STATES, AT TIME OF SENTENCING

WILL MOVE THE COURT TO DISMISS THE CURRENTLY PENDING INDICTMENT
IN THIS MATTER WHICH CHARGES HIM WITH MULTIPLE VIOLATIONS OF
TITLE 21 OF THE UNITED STATES CODE, SECTION 841(a)(1). MR. SIMMS
UNDERSTANDS THAT THE MAXIMUM PENALTY FOR EACH COUNT IN THE SUPERSEDING
INFORMATION IS IMPRISONMENT FOR A PERIOD UP TO 5 YEARS, A FINE OF
250,000, A TERM OF SUPERVISED RELEASE TO BE DETERMINED BY THE COURT
COSTS OF PROSECUTION, DENIAL OF CERTAIN FEDERAL BENEFITS AS WELL
AS AN ASSESSMENT IN THE AMOUNT OF $100, SO IN ESSENCE THE MAXIMUM
PENALTY THAT MR. SIMMS FACES WOULD BE DOUBLE THAT, UP TO 10 YEARS
A FINE UP TO $500,000 AND SPECIAL ASSEMENTS TOTALING $200. SEE
**(EXHIBIT 4 PLEA COLLOQUY HEARING TRANSCRIPTS);**

The record show that the Government stated at the plea colloquy
hearing that the petitioner sentence was capped at 10 years for
his cooperation up front in exchange for his cooperation. The
petitioner acknowledge that, the petitioner sentence was capped at
10 years but with 3 points acceptance of responsibility the
petitioner sentenced would have been reduced to 84 months. The
petitioner would bring this Court's attention to this matter that,
the petitioner is not challenging the plea agreement but that the
petitioner sentence was capped at 10 years and wanted the benefit
of 3 points for acceptance of responsibility. counsel Mrs. Ulrich
was ineffective for failure to object to this sentence when the
record clearly show that a mistake had been committed. This dereliction
and deficient performance undermined the petitioner Sixth Amendment.
Therefore, the petitioner received ineffective assistance of
counsel by counsel failing to object to the PSR.

**PREJUDICE:**

The record show that the petitioner sentence was capped at 10 years or 120 months. The record shows that this was maximum the petitioner could receive. The record shows that at sentencing the petitioner was to receive a 3 point acceptance of responsibility. The petitioner is suffering 36 months of prejudice because if counsel mrs. Ulrich, would have objected the petitioner would have received a reduced sentence. The petitioner is aware that the petitioner's Criminal History was IV and a Base Offense Level of 32 but, the petitioner sentence was capped at a 120 months for his cooperation, plus 3 points for acceptance of responsibility would have given the petitioner 84 months. The prejudice of 36 months is quantifiable, and sufficient if this Honorable Court will review the record in the petitioner's case.

## ARGUMENT

For the proposition of this augument the petitioner will rely

on **McLesse v. Mazurkiewicz,** 1 F.3d 159 (3rd Cir.1993); Ineffective

assistance of counsel claims are mixed questions of law and fact.

Id. at 698, 104 S.Ct. at 2070; **Reese v. Fulcomer,** 964 F.2d 247,

253 (3d Cir.1991), cert. denied, U.S. 112 S.Ct. 1679, 118 L.Ed.

2d 396 (1992). We subject the legal component to plenary review.

Reese, 964 F.2d at 253. our scope of review over the factual elements

depend on their origin. While a state court's conclusion that

counsel rendered effective assistance is not a finding of fact

subject to deference by a federal court, Reese, 964 F.2d at 254

(quoting Strickland, 466 U.S. at 698, 104 S.Ct. at 2070), state

court findings of historical fact made in the course of deciding

an ineffectiveness claim are presumptively correct if they meet

the requirements of 28 U.S.C.A. § 2254(d) (West 1977), see **Ahmad**

**v. Redman,** 782 F.2d 409, 411-12 (3d Cir.), cert. denied, 479 U.S.

831, 107 S.Ct.119, 93 L.Ed.2d 66 (1986). in addition, when, as

in the present case, the district court did not hold an evidentiary

hearing and engage in independent fact finding, and the habeas

evidence is limited to that contained i nthe state court record,

our review of a district court's decision to grant the habeas corpus

petition is plenary. **Lesko v. Owens,** 881 F.2d 44, 50-51 (3rd Cir.

1989), cert. denied, 493 U.S. 1036, 110 S.Ct. 759, 107 L.Ed.2d

775 (1190); See **Hakeem v. Beyer,** 990 F.2d 750, 758 (3rd Cir.1993)

(because district court never conducted evidentiary hearing,

appellate court exercises de novo review over factual inferences

district court drew from state record).

The Sixth Amendment right to counsel encompasses the right to
effective assistance of counsel .Strickland, 466 U.S. at 686, 104
S.Ct. at 2063-64. A claim of ineffective assistance requires a
defendant to establish that counsel's representation fell below
an objective standard of reasonableness and that the deficient
performance prejudiced the defense. Id. at 687-88, 104 S.Ct. at
2064-65. In order to demonstrate prejudice, the defendant must
establish If a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different." Id. at 694, 104 S.Ct. at 2086. A reasonable probability
is one sufficient to undermine confidence in the outcome. Id. Stated
differently, there will be no award of relief unless the defendant
affirmatively establishes the likelihood of an unreliable verdict.
See id. at 688-89, 691, 694, 104 S.Ct. at 2064-65, 2066-67, 2068.
Keeping these standards in mind, we turn to the Commonwealth's
allegations of error. See **United States v. McCoy,** 410 F.3d 124
(3rd Cir.2005). **Solis v. United States,** 252 F.3d 289, 293 (3d
Cir.2001).

## EVIDENTIARY HEARING

For this proposition of a evidentiary hearing

the petitioner will rely on **United States v. Day,** 969 F.3d 39

93rd Cir.1992); in which this Court stated; Section 2255 itself

limits the discretion of a district court to summarily dismiss a

petition brought under that section:

> Unless the motion and the files and records
> of the case conclusively show that the
> prisoner is entitled to no relief, the
> court shall cause notice thereof to be
> served upon the United States attorney,
> grant a prompt hearing thereon, determine
> the issues and make findings of fact and
> conclusion of law with respect thereto.

28 U.S.C. § 2255 (emphsis added).

We have described the district court's duty, and our standard of

review, as follows: When a motion is made under 28 U.S.C. § 2255
the question of whether to order a hearing is committed to the

sound discretion of the district court. In exercising that discretion

the court must accept the truth of the movant's factual allegations

unless they are clearly frivolous on the basis of the existing

record. Further, the Court must order an evidentiary hearing to

determine the facts unless the motion and files and records, of

the case show conclusively that the movant is not entitled to

relief. Accordingly we review this matter to determine if the trial

court abused its discretion in not ordering a hearing. **Virgin Island**

**v. Forte,** 865 F.2d 59, 62 (3rd Cir.1989)(citation omitted). See

also Rule 4(b) of the Rules Governing Section 2255 proceedings.

**United States v. McCoy,** 410 F.3d 124 (3rd Cir.2005).

## CONCLUSION

The Petitioner request that this Honorable Court **GRANT** the
Petitioner a Evidentiary Hearing because the Petitioner received
ineffective assistance of counsel, and this Honorable Court
abused it's discretion when the Petitioner was denied the right
to allocution, and counsel failed to perfect an appeal on the
Petitioner behalf.

Respectfully submitted

BY: *Eddie Simms*
Eddie Simms
(PRO-SE)
Reg. No.# 58128-053
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA.
17837

EXECUTED: OCTOBER 03 ,2005.

(37)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have sent a true and exact copy of the foregoing Motion for Leave to Amend Petitioner's Title 28 U.S.C. § 2255 to Vacate, and Set Aside, or Correct Sentence Pursuant to Fed. R. Civ. P. 15(a), this Day October_03_, 2005, United States First Class Mail TO:

        Assistant United States Attorney
        Theodore B. Smith, III
        228 Walnut Street
        Harrisburg, PA.
        17108

                        Respectfully submitted

        BY: _Eddie Simms_____
            Eddie Simms
            (PRO-SE)
            Reg. No.# 58128-053
            Federal Prison Camp
            P.O. Box 2000
            Lewisburg, PA.
            17837

EXECUTED: OCTOBER_03_, 2005.

(EXHIBIT 1)

CLIENT'S COPY

DMB:WAB:caz

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) CRIMINAL NO. 1:CR-00-032 |
| | ) |
| v. | ) (Judge Kane) |
| | ) |
| **EDDIE SIMMS** | ) |

### P L E A   A G R E E M E N T

The following plea agreement is entered into by and between the United States Attorney for the Middle District of Pennsylvania and the above-captioned defendant. Any reference to the United States or to the Government in this Agreement shall mean the office of the United States Attorney for the Middle District of Pennsylvania.

The defendant, as well as counsel for both parties, understand that the United States Sentencing Commission Guidelines which took effect on November 1, 1987, as amended, will apply to the offenses to which the defendant is pleading guilty, since those offenses were completed after the effective date of the implementation of the Guidelines.

1. The defendant agrees to waive indictment by a grand jury and plead guilty to a two-count felony Superseding Information which will be filed against the defendant by the United States Attorney for the Middle District of Pennsylvania. That Superseding Information will charge the defendant in each count with a violation of Title 18, United States Code. Section 1952(a)(3), (interstate travel in aid of racketeering, i.e.,

distribution of cocaine and crack cocaine). The maximum penalty for each offense is imprisonment for a period of 5 years, a fine of $250,000, a term of supervised release to be determined by the court, the costs of prosecution, denial of certain federal benefits as well as an assessment in the amount of $100. At the time the guilty plea is entered, the defendant shall admit to the Court that the defendant is, in fact, guilty of the offenses charged in each count of the Superseding Information.

2. The defendant also understands that the Court must impose a term of supervised release following any sentence of imprisonment exceeding one (1) year, or when required by statute. The Court may require a term of supervised release in any other case.

3. At the time of sentencing on the Superseding Information described above, the United States agrees to move for dismissal of the indictment filed under Criminal Number 1:CR-00-032. The defendant agrees, however, that the United States may at its sole election reinstate any dismissed counts in the event that the charge(s) to which the defendant has pleaded guilty pursuant to this plea agreement are subsequently vacated or set aside by the district court or any appellate court. The defendant further agrees to waive any defenses to the reinstatement of these charges based upon laches, the assertion of speedy trial rights, any applicable statute of limitations or any other grounds in the event that the defendant successfully vacates or sets aside any conviction or sentence imposed pursuant to this plea agreement.

4. The defendant understands that the total, maximum possible sentence for all charges is the combination of penalties described above; that is 10 years in prison

2

and/or fines totaling $500,000, a term of supervised release to be determined by the Court, the costs of prosecution, denial of certain federal benefits and an assessment totaling $200.

5.  The defendant understands that the Court may impose a fine pursuant to the Sentencing Reform Act of 1984.  The willful failure to pay any fine imposed by the Court, in full, may be considered a breach of this plea agreement.  Further, the defendant acknowledges that willful failure to pay the fine may subject the defendant to tional criminal violations and civil penalties pursuant to Title 18, United States Code, Section 3611, et seq.

6.  The defendant understands that under the alternative fine section of Title 18, United States Code, Section 3571, the maximum fine quoted above may be increased if the District Court finds that any person derived pecuniary gain or suffered pecuniary loss from the offense and that the maximum fine to be imposed, if the Court elects to proceed in this fashion, could be twice the amount of the gross gain or twice the amount of the gross loss resulting from the offense.

7.  If the Court awards a fine or restitution as part of the defendant's sentence, and the sentence includes a term of imprisonment, the defendant agrees to voluntarily enter the United States Bureau of Prisons-administered program known as the Inmate Financial Responsibility Program through which the Bureau of Prisons will collect up to ?% of the defendant's prison salary and apply those amounts on the defendant's behalf to the payment of the outstanding fine and restitution orders.

3

8. The defendant understands that the Court will impose a special assessment of $100 on each count of the Superseding Information pursuant to the provisions of Title 18, United States Code, Section 3013. No later than the date of sentencing, the defendant or defendant's counsel shall mail a check in payment of the special assessment directly to the Clerk, United States District Court Middle District of Pennsylvania. This check should be made payable to "Clerk, United States District Court". Counsel for the defendant shall provide a copy of the special assessment check to the United States Attorneys Office for the Middle District of Pennsylvania at the time of sentencing certifying compliance with this provision of the plea agreement. An intentional failure to make this payment, or to pay with insufficient funds, may be treated by the United States as a breach of this plea agreement and may also result in further prosecution or the filing of additional criminal charges.

9. The defendant agrees, as a part of this agreement, to submit to interviews by the United States Attorney Office's Financial Litigation Unit regarding the defendant's financial status. Pursuant to Title 18, United States Code, Section 3664 (d)(3) the defendant also agrees to complete the required financial affidavit, fully describing the defendant's financial resources within 10 days of the guilty plea. The defendant will submit the original affidavit, on forms prescribed by the probation office, to the U.S. Probation Office with a copy to this office.

10. The United States Attorney's Office for the Middle District of Pennsylvania agrees that it will not bring any other criminal charges against the defendant directly arising out of the defendant's involvement in the offense described above.

4

11.   Counsel for the defendant has affirmatively indicated to the United States Attorney's Office that the defendant not only wishes to enter a plea of guilty, but will clearly demonstrate a recognition and affirmative acceptance of responsibility as required by the sentencing guidelines.  Additionally, the defendant has assisted authorities in the investigation and prosecution of his own misconduct by taking the following step(s):

> (a) By timely providing complete information to the government concerning his own involvement in the offense;
>
> (b) By timely notifying authorities of his intention to enter a plea of guilty thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

Accordingly, if the defendant can adequately demonstrate this acceptance of responsibility to the government, the United States Attorney's Office will therefore recommend that the defendant received a three-point reduction in the defendant's offense level for acceptance of responsibility.  The failure of the Court to find that the defendant is entitled to any reduction shall not be a basis to void this plea agreement.

12.   At the time of sentencing, the United States may make a recommendation that it considers appropriate based upon the nature and circumstances of the case and the defendant's participation in the offense, and specifically reserves the right to recommend a sentence up to and including the maximum sentence of imprisonment and fine allowable, together with the cost of prosecution.

13.   If probation or a term of supervised release is ordered, the United States will recommend that the court impose the following special conditions:

(a) The defendant be prohibited from possessing a firearm or other dangerous weapon.

(b) The defendant pay the fine in accordance with a schedule to be determined by the court.

(c) The defendant be directed to provide the probation office and the United States Attorney access to any requested financial information.

(d) **The defendant be directed to attend substance abuse** counseling which may include testing to determine whether the defendant has reverted to drug or alcohol use.

14. The defendant also understands that the United States will provide to the United States Probation Office all information in its possession which the United States deems relevant regarding the defendant's background, character, cooperation, if any, and involvement in this or other offenses.

15. The defendant understands that pursuant to the United States District Court for the Middle District of Pennsylvania "Policy for Guideline Sentencing" both the United States and defendant must communicate to the probation officer within fourteen (14) days after disclosure of the pre-sentence report any objections they may have as to material information, sentencing classifications, sentencing guideline ranges and policy statements contained on or omitted from the report. The defendant agrees to meet with the United States at least five (5) days prior to sentencing in a good faith attempt to resolve any substantive differences. If any issues remain unresolved, they shall be communicated to the probation officer for his inclusion on an addendum to the pre-sentence report. The defendant understands that unresolved substantive objections will be decided by the court at the sentencing hearing where the standard of

proof will be a preponderance of the evidence. Objections by the defendant to the pre-sentence report or the Court's rulings, will not be grounds for withdrawal of a plea of guilty.

16. The defendant understands that pursuant to the Victim and Witness Protection Act (18 U.S.C., Section 3521, et seq.) and the regulations promulgated under the Act by the Attorney General of the United States:

(a) The victim of a crime is given the opportunity to comment on the offense and make recommendations regarding the sentence to be imposed. The defendant also understands that the victim's comments and recommendations may be different than those of the parties to this agreement.

(b) The federal prosecutor is required to consult with victims of serious crimes to obtain their views regarding the appropriate disposition of the case against the defendant and make the information regarding sentencing known to the Court. The defendant understands that the victim's opinions and recommendations may be different than those presented by the United States as a consequence of this agreement.

(c) The federal prosecutor is required to "fully advocate the rights of victims on the issue of restitution unless such advocacy would unduly prolong or complicate the sentencing proceeding," and the Court is authorized to order restitution by the defendant including, but not limited to, restitution for property loss, personal injury or death.

17. At the sentencing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charges which the United States has agreed to dismiss, and the nature and extent of the defendant's cooperation, if any. The United States will be

7

entitled to bring to the Court's attention and the Court will be entitled to consider any failure by the defendant to fulfill any obligation under this agreement.

18. The defendant understands that the Court is not a party to and is not bound by this agreement nor any recommendations made by the parties. Thus, the Court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 10 years, a fine of $500,000, a term of supervised release, the costs of prosecution, denial of certain federal benefits and assessments totaling $200.

19. If the Court imposes a sentence with which the defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone, nor will the defendant be permitted to withdraw any pleas should the Court decline to follow any recommendations by any of the parties to this agreement.

20. The defendant agrees to cooperate fully with the United States. The defendant understands and agrees that complete and truthful cooperation is a material condition of this agreement. Cooperation shall include providing all information known to the defendant regarding any criminal activity, including but not limited to the offenses described in this agreement. Cooperation will also include complying with all reasonable instructions from the United States, submitting to interviews by investigators and attorneys at such reasonable times and places to be determined by counsel for the United States and to testify fully and truthfully before any grand juries, hearings, trials or any other proceedings where the defendant's testimony is deemed by the United States to be relevant. The defendant understands that such cooperation shall be

8

provided to any state, local and federal law enforcement agencies designated by counsel for the United States. The United States agrees that any statements made by the defendant during the cooperation phase of this agreement shall not be used against the defendant in any subsequent prosecutions unless and until there is a determination by the Court that the defendant has breached this agreement. However, the United States will be free to use at sentencing in this case any of the statements and evidence provided by the defendant during the cooperation phase of the

ement. Moreover, the parties agree that, although the defendant's statements made during the cooperation phase cannot be used against the defendant in any subsequent criminal prosecution, this provision shall not preclude the United States from requiring the defendant to submit to interviews by local, state or federal agencies which may use these statements in civil or administrative proceedings involving the defendant. The defendant waives and agrees to waive any rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed until the cooperation phase has been completed so that at sentencing the Court will have the benefit of all relevant information.

21. The defendant agrees to act in an undercover capacity to the best of the defendant's ability and agrees to allow the authorities to monitor and tape record conversations, in accordance with Federal law, between the defendant and persons believed to be engaged in criminal conduct, and fully cooperate with the instructions of law enforcement authorities in such undercover activities.

9

22.  The defendant, if requested by the attorney for the United States, agrees to submit to polygraph examinations by a polygrapher selected by the United States.

23.  In the event the United States believes the defendant has failed to fulfill any obligations under this agreement, then the United States shall, in its discretion, have the option of petitioning the Court to be relieved of its obligations.  Whether or not the defendant has completely fulfilled all of the obligations under this agreement shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant shall be admissible and at which the United States shall be required to establish any breach by a preponderance of the evidence. In order to establish any breach by the defendant, the United States is entitled to rely on statements and evidence given by the defendant during the cooperation phase of this agreement.

24.  The parties agree that at any court hearings held to determine whether the defendant has breached this agreement, the polygraph results and the polygrapher's conclusions and opinions shall be admissible.  The parties also agree that such polygraph data shall be admissible at any sentencing hearings involving the defendant.

25.  The defendant and the United States agree that in the event the Court concludes that the defendant has breached the agreement:

> (a)  The defendant will not be permitted to withdraw any guilty plea tendered under this agreement and agrees not to petition for withdrawal of any guilty plea;
>
> (b)  The United States will be free to make any recommendations to the Court regarding sentencing in this case;

10

(c) Any evidence or statements made by the defendant during the cooperation phase will be admissible at any trials or sentencings;

(d) The United States will be free to bring any other charges it has against the defendant, including any charges originally brought against the defendant or which may have been under investigation at the time of the plea. The defendant waives and hereby agrees not to raise any defense to the reinstatement of these charges based upon collateral estoppel, Double Jeopardy or other similar grounds.

26.  Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, or false statement, in violation of Title 18, United States Code, Section 1621, 1623, or 1001, or obstruction of justice, in violation of Title 18, United States Code, Section 1503, 1505, or 1510, should the defendant commit any of those offenses during the cooperation phase of this agreement.  Should the defendant be charged with any offense alleged to have occurred after the date of this agreement, the information and documents disclosed to the United States during the course of the cooperation could be used against the defendant in any such prosecution.

27.  The defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning the defendant and/or this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, law enforcement agencies and licensing and regulatory agencies.

28.  Nothing in this agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties due from the defendant arising out of or related in any way to the offenses identified in this agreement.

29. Nothing in this agreement shall restrict or limit the nature or content of the United States's motions or response to any motions filed on behalf of the defendant. Nor does this agreement in any way restrict the government in responding to any request by the court for briefing, argument or presentation of evidence regarding the application of the Sentencing Guidelines to the defendant's conduct, including but not limited to, requests for information concerning possible sentencing departures.

30. Nothing in this agreement shall bind any other federal, state or local enforcement agency.

31. The United States is entering into this Plea Agreement with the defendant because this disposition of the matter fairly and adequately addresses the gravity of the series of offenses from which the charges are drawn, as well as the defendant's role in such offenses, thereby serving the ends of justice.

32. This document states the complete and only Plea agreement between the United States Attorney for the Middle District of Pennsylvania and the defendant in this case, and is binding only on the parties to this agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court. No other promises or inducements have been or will be made to the defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

33. The original of this agreement must be signed by the defendant and defense counsel and received by the United States Attorney's Office on or before 5:00 p.m., May 15, 2000, otherwise the offer shall be deemed withdrawn.

12

34. None of the terms of this agreement shall be binding on the Office of the United States Attorney for the Middle District of Pennsylvania until signed by the defendant and defense counsel and until signed by the United States Attorney.

## ACKNOWLEDGMENTS

I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

_____
Dated

_____
EDDIE SIMMS
Defendant

I am the defendant's counsel. I have carefully reviewed every part of this agreement with the defendant. To my knowledge my client's decision to enter into this agreement is an informed and voluntary one.

_____
Date

_____
LORI ULRICH, ESQUIRE
Counsel for Defendant

5/16/00
_____
Date

_____
DAVID M. BARASCH
United States Attorney

WAB:caz
5/10/00;2000R00081

13

(EXHIBIT 2)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :

        v.                      :   CRIMINAL NO. 1:CR-00-032
                                    (Judge Kane)
EDDIE SIMMS,                    :
        Defendant



TRANSCRIPT OF PROCEEDINGS

SENTENCING

Before:  Hon. Yvette Kane, Judge

Date:  October 12, 2000

Place:  Courtroom No. 4
        Federal Building
        Harrisburg, Pa.



COUNSEL PRESENT:

    WILLIAM A. BEHE, Assistant U.S. Attorney

        For - Government

    LORI J. ULRICH, Esquire

        For - Defendant




                        Monica L. Zamiska, RPR
                        Official Court Reporter

1          MR. BEHE:  Your Honor, this is the matter of the

2     United States of America v. Eddie Simms, which is at

3     1:CR-00-032.  May the record reflect that Mr. Simms is

4     present before you, as well as his counsel Lori Ulrich, and

5     now is the time and place set for sentencing in this matter.

6     There has been a presentence investigation report prepared

7     and available for the parties to review.  I don't believe

8     that there are any outstanding objections to this, and the

9     presentence report prepared in this matter calls for a

10    sentence of 120 months to be imposed in this matter.

11         THE COURT:  Miss Ulrich, have you received the

12    report?

13         MRS. ULRICH:  Yes, Your Honor, and I reviewed it

14    with Mr. Simms, and we do not have any objections to the

15    report.

16         THE COURT:  All right.  Is there anything you want

17    to present on behalf of Mr. Simms?

18         MRS. ULRICH:  Just briefly, Your Honor, because we

19    understand the sentence has to be 120 months.  He did the

20    right thing and cooperated, and that's why he is facing the

21    sentence of 10 years.  I think he's made a commitment to

22    himself and his family that this is it, and he wants to turn

23    his life around.

24         I just wanted to mention that his girlfriend

25    Crystal Prunty is in the courtroom.  She's been very

1    supportive.  And his mother just found out this morning that

2    his sentencing was today, and she was a little upset about

3    that, but otherwise she would have been here.  So he does

4    have a very supportive family.  I did want to mention that to

5    the Court.

6            THE COURT:  Is Mrs. Toomey your mother?

7            THE DEFENDANT:  Excuse me?

8            THE COURT:  Mrs. Toomey.

9            THE DEFENDANT:  No, she's my girlfriend's mother.

10           THE COURT:  Okay.  She wrote to the Court.  I don't

11   know if you have seen the letter.

12           MRS. ULRICH:  I did not, Your Honor.

13           THE COURT:  A copy of the letter is on file with

14   the Court from Brenda Toomey and also from Crystal Prunty

15   requesting the Court to use whatever power it has, and I'm

16   not sure I have any power in this matter, to make sure that

17   Mr. Simms is confined close to home because there is a very

18   strong will on the part of Miss Prunty to stay in touch with

19   him and to have him involved with their own children.

20           MRS. ULRICH:  Your Honor, he has asked me to ask

21   the Court to recommend that he serve the sentence at SCI

22   Schuylkill.

23           THE COURT:  Mr. Behe, I don't know what information

24   you have on that.  I think I can make that recommendation,

25   but my guess is that it will fall on deaf ears.  People get

1    assigned wherever they can reasonably be housed and their

2    needs met.  I can make that recommendation.

3         MR. BEHE:  I endorse that recommendation.  I

4    believe to the extent that it would be there, it would be

5    helpful, as opposed to there being no recommendation.

6         THE COURT:  Okay.  All right.

7         MRS. ULRICH:  Thank you.

8         THE COURT:  Anything else?

9         MRS. ULRICH:  We have nothing further.

10         THE COURT:  All right.  Mr. Behe.

11         MR. BEHE:  Yes, Your Honor, I simply wanted to

12    advise Mr. Simms that the agreement that's been reached in

13    this matter was sort of a plea agreement where you got your

14    benefit up front as opposed to other cases where we would

15    come in with a motion for a guideline departure at this time.

16    But that's not the end of the matter, because the Federal

17    Rules of Criminal Procedure allow the United States to come

18    back into court within a year pursuant to Rule 35 and ask the

19    Court to depart below the sentence or to give you a reduced

20    sentence if you provide substantial assistance.  And without

21    detailing anything, there are a number of matters that were

22    raised during our discussions and from other investigations

23    that we think you may be able to assist us on, and if

24    anything comes of those matters, we would be able to come

25    back before the Court.  So I would ask you to please keep

1    that in mind and keep in touch with your lawyer so that we

2    can see whether or not that would be a possibility.  Do you

3    understand?

4            THE DEFENDANT:  Yes.

5            THE COURT:  All right.  Mr. Simms, it sounds like

6    you have made a sincere attempt here to right at least some

7    of the wrongs that are racking up on your sheet, and maybe

8    this is a turn around time for you to go forward and have a

9    good life with your family.

10           THE DEFENDANT:  Yes.

11           THE COURT:  Pursuant to the Sentencing Reform Act

12   of 1984 it is the judgment of the Court that the defendant

13   Eddie Simms is hereby committed to the custody of the Bureau

14   of Prisons to be imprisoned for a term of 120 months.  This

15   term consists of terms of 60 months on each of Counts 1 and 2

16   to be served consecutively.

17           The Court finds that the defendant has an ability

18   to pay a fine below the applicable guideline range.

19   Accordingly it is further ordered that the defendant pay to

20   the United States the sum of $700, consisting of a fine of

21   $500 on Count 1 and a special assessment of $100 on each

22   count.  The fine and assessments are due immediately, shall

23   be paid through the Clerk of Court and are payable during the

24   period of incarceration with any balance to be paid within 2

25   years of release from custody.

1      Upon release from imprisonment the defendant shall

2   be placed on supervised release for a term of 2 years.  This

3   term consists of terms of 2 years on each count to be served

4   concurrently.

5      Within 72 hours of release from the custody of the

6   Bureau of Prisons the defendant shall report in person to the

7   probation office in the district to which he is released.

8      As a condition of supervision the defendant shall

9   submit to a drug test within 15 days of release from custody

10  and at least two periodic drug tests thereafter.

11      While on supervised release the defendant shall

12  comply with the standard conditions that have been adopted by

13  this Court and with the following additional conditions:  The

14  defendant shall pay any balance of the fine imposed by this

15  judgment which remains unpaid at the commencement of the term

16  of supervised release in minimum monthly installments of no

17  less than $25.

18      Mr. Simms, you can appeal your conviction if you

19  believe that your guilty plea was somehow unlawful or

20  involuntary or that there was some other fundamental defect

21  in the proceedings that was not waived by the guilty plea.

22  You also have a statutory right to appeal your sentence under

23  certain circumstances, particularly if you think the sentence

24  is contrary to law.  With very few exceptions any notice of

25  appeal would have to be filed within 10 days from today, and

1    if you are unable to pay the costs of appeal, you could apply

2    for leave to appeal in forma pauperis.  If you so request,

3    the Clerk of Court would prepare and file a notice of appeal

4    on your behalf.

5        The basis for the sentence is as follows:  The

6    Court adopts the factual findings and guideline application

7    in the presentence report.  The fine is below the guideline

8    range because of the defendant's inability to pay.  The

9    sentence is within the guideline range, that range does not

10   exceed 24 months, and the Court finds no reason to depart

11   from the sentence called for by application of the

12   guidelines.

13       Anything further in this matter, counsel?

14       MRS. ULRICH:  We have nothing further.

15       MR. BEHE:  Yes, Your Honor, I respectfully move at

16   this time for the dismissal of the original indictment in

17   this case.

18       THE COURT:  All right, motion granted.  Thank you,

19   counsel.

20       MR. BEHE:  Thank you, Your Honor.

21       MRS. ULRICH:  Actually there is one more thing, the

22   recommendation for Schuylkill, I don't know if that was on

23   the record yet or not.

24       THE COURT:  I will make that recommendation.  It

25   will be part of the written documents that are forwarded.

1          MRS. ULRICH:  Thank you.

2          THE COURT:  All right.  We'll be in recess.

3          (The proceedings concluded.

4          I hereby certify that the proceedings and evidence

5    of the court are contained fully and accurately in the notes

6    taken by me on the sentence of the within cause and that this

7    is a correct transcript of the same.

8                              *Monica L. Zamiska*

9                              Monica L. Zamiska, RPR

10                             Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

(EXHIBIT 3)

IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | ) |
| **EDDIE SIMMS** | ) |
| | ) |
| (a/k/a "DJ") | ) |
| | ) |
| (True Name: Eddie Sims, Jr.) | ) |

**PRESENTENCE INVESTIGATION REPORT**

Docket No. 1:CR-00-032-01
(Superseding Information)

---

**Prepared for:**    The Honorable Yvette Kane
U.S. District Judge

**Prepared by:**    William C. Pool
Senior U.S. Probation Officer, Harrisburg Office
(717) 901-2860

**Assistant U.S. Attorney**
William A. Behe
P.O. Box 11745
Room 217, Federal Building
Harrisburg, PA  17108
(717) 221-4482

**Defense Counsel**
Lori Ulrich
Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA  17101
(717) 782-2237

**Sentence Date:**

**Offense:**    Count I and II - Interstate Travel In Aid of Racketeering (18 USC § 1952(a)(3)) - 5 years imprisonment/$250,000 fine, each count

**Release Status:** Arrested on 02/08/00 by FBI in New York; Ordered removed to the MD/PA on 02/09/00; Ordered detained on 02/29/00. Defendant at York County Prison, York, PA.

**Detainers:**  None

**Codefendants:**  None

**Related Cases:**  None

**Date Report Prepared:** 8/31/00        **Date Report Revised:** 9/14/00

<u>**Identifying Data:**</u>

**Date of Birth:**    12/27/71
**Age:**              28
**Race:**             Black/Non-Hispanic
**Sex:**              Male


**S.S. #:**           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
**FBI #:**            922002NA6
**USM#:**             58128-053
**Other ID #:**       <u>NY SID#</u>: 7022178Z


**Education:**        High School Diploma (unverified GED)
**Dependents:**       None
**Citizenship:**      United States

**Legal Address:**    York County Prison
                      3401 Concord Rd.
                      York, PA  17402

**Aliases:**          "D.J."

**PART A.  THE OFFENSE**

**Charge(s) and Conviction(s)**

1.  A five-count Indictment charges Eddie Simms, a/k/a "D.J." in Counts I, II, III, and IV with separate distributions of crack cocaine on various dates between September 27, 1999 and January 26, 2000, each in violation of 18 USC § 841(a)(1).  Count V charges the defendant with possession and possession with intent to distribute fifty (50) grams or more of crack cocaine from January 1, 1999 to February 1, 2000, in violation of 18 USC § 841(a)(1).

2.  On May 16, 2000, the U.S. Attorney's Office filed a two-count Superseding Information charging Eddie Simms with interstate travel in aid of racketeering (distribution of fifty grams or more of crack cocaine) from January 1, 1999 to July 1999 (Count I), and from August 1999 to February 1, 2000 (Count II), each in violation of 18 USC § 1952(a)(3). On May 17, 2000, the defendant pleaded guilty to a Superseding Information, pursuant to a written plea agreement, wherein he agreed to cooperate with the Government.  The Government agreed to recommend that the defendant receive a reduction in offense level for acceptance of responsibility and, if warranted, to move for a downward departure, based on the defendant's substantial assistance.  At the plea hearing, Government counsel noted that the defendant was pleading to lesser charges in anticipation of his continued cooperation.  The Indictment against Mr. Simms is to be dismissed at sentencing.

**The Offense Conduct**

3.  The following information was based on interviews with the Assistant U.S. Attorney, case agent, and a review of investigative reports.  The case against the defendant developed from information obtained by the Dauphin County, Pennsylvania Drug Task Force, which was investigating drug trafficking in the Harrisburg, Pennsylvania area.

4.  In September 1999, an undercover informant advised task force members that he/she purchased crack cocaine from an individual known as "D.J."  Later, in January 2000, another undercover informant related that he/she also purchased crack cocaine from an individual named "D.J."  Case agents noted that each informant had used the same pager number to contact "D.J." about obtaining drugs.  The informant from January 2000 further reported that "D.J." had been shot during the fall of 1999.  Authorities then checked with Harrisburg City Police and local hospitals, and determined that the individual was Eddie Simms, who was from New York.

5.  The second informant advised that over a period of sixteen months prior to February 2000, he/she had purchased between one-eighth and one-quarter ounces of crack cocaine on about 200 different occasions from "D.J."  The informant was also aware that other people obtained crack cocaine from the defendant.  Subsequently, the second informant, working with task force members, made two controlled buys of crack cocaine from Eddie Simms on January 24, 2000, and January 26, 2000, in the amounts of approximately three (3) grams and four (4) grams, respectively.

1

6.    On February 8, 2000, the defendant was arrested on a federal warrant at the New York State Parole Office, Hampstead, New York, where he reported for a scheduled appointment with his parole officer. Later, on April 13, 2000, Mr. Simms was interviewed by federal agents as part of his cooperation agreement and informed that he came to Harrisburg from New York City during mid-February 1999 with a friend, Norm Thomas, a/k/a "Boo," who was also a New York resident. The defendant advised that Thomas was involved in the sale of crack cocaine in Harrisburg, and had an established residence and clientele. The defendant informed that he became involved in the distribution of crack, but had separate customers from Thomas. Mr. Simms related that during the first five or six months he was in Harrisburg, he traveled to New York City approximately every two weeks to report to his parole officer. While in New York, he would also purchase two ounces of crack cocaine, which he would then transport to Harrisburg. He would bag the crack into "dime" amounts and sell at or in the vicinity of Hodge's Bar. He recalled making as much as $3,700, less the $1,400 cost of the crack cocaine.

7.    The defendant further informed case agents that he possessed a .22 caliber semi-automatic pistol during August and September 1999, but stated he never used the weapon and that it disappeared a few weeks before his arrest. He also advised that he previously owned a .44 caliber handgun, which was stolen from him, along with some stereo equipment. Mr. Simms said that in about July or August 1999, he began to purchase crack cocaine from Jason Harriman, a/k/a "Jade Kiss," who resided in Camelot Village, Harrisburg. The defendant informed that he purchased approximately two (2) ounces of crack cocaine from Harriman every week and occasionally would purchase two (2) ounces of cocaine twice a week. He recalled that he continued his purchases from Harriman until Harriman was murdered in December 1999.

**Victim Impact**

8.    The Government has identified no specific victim in the instant case.

**Adjustment for Obstruction of Justice**

9.    There is no evidence that the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

10.    During interviews with the probation officer, Mr. Simms admitted to transporting crack cocaine from New York to Harrisburg for distribution. He informed that he was in Harrisburg for about one year, and during the first six months, would travel about two times a month to and from New York. According to the defendant, after August 1999, he purchased crack cocaine in Harrisburg and did not need to travel to New York for drugs, but continued to meet with his parole officer. He emphasized that he was not in Harrisburg or involved in drug activities as long as reported by some Government witnesses. Mr. Simms generally agreed that he transported at least one hundred (100) grams over the course of his offense. He said that all his drug proceeds were used for personal living expenses.

## Offense Level Computation

11.  The sentencing guidelines effective November 1, 1998, were used in the following calculations.

12.  Because the offense level is determined largely by the total amount of controlled substances, Counts I and II are grouped into a single group under USSG § 3D1.2(d). Although the defendant has admitted to transporting and distributing substantial amounts of crack cocaine, and the possession of firearms, this information is part of his cooperation agreement and is not considered in the guideline calculations pursuant to USSG § 1B1.8.

13.  **Base Offense Level:** The guideline for an 18 USC § 1952 offense is found in USSG § 2E1.2, which directs the use of the offense level applicable to the underlying offense. The guideline for a 21 USC § 841 (distribution of crack cocaine) is found in USSG § 2D1.1. It is conservatively estimated that Mr. Simms' offenses involved at least 100 grams of cocaine base. Offenses involving at least 50 grams but less than 150 grams of cocaine base have a base offense level of thirty-two.                                            <u>32</u>

14.  **Specific Offense Characteristics:** None.            <u>0</u>

15.  **Victim-Related Adjustments:** None.               <u>0</u>

16.  **Adjustment for Role in the Offense:** None.        <u>0</u>

17.  **Adjustment for Obstruction of Justice:** None.     <u>0</u>

18.  **Adjusted Offense Level:** Thirty-two.              <u>32</u>

19.  **Adjustment for Acceptance of Responsibility:** Based on the defendant's admissions and guilty plea, it appears that he has accepted responsibility for the instant offense and, pursuant to USSG § 3E1.1, the offense level is reduced by two levels.                                            <u>-2</u>

20.  The defendant provided complete information to the Government concerning his involvement in the offense and timely notified authorities of his intention to enter a guilty plea. A one-level reduction under § 3E1.1(b) is warranted.                                            <u>-1</u>

21.  **Chapter Four Enhancements:** None.                <u>0</u>

22.  **Total Offense Level:** Twenty-nine.               <u>29</u>

## PART B.   DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

23.  None.

## Adult Criminal Convictions

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 24. | 12/21/92 (Age 20) | Criminal possession of crack cocaine/ Oneida County, Court, NY (No. 1993-61) | 08/30/93: 16 months to 4 years custody; 07/28/95: Released on parole; 12/08/95: Parole revoked | 4A1.1(a) 3 |

On June 25, 1993, the defendant, represented by counsel, pled guilty to the criminal possession of a controlled substance, involving his possession and sale of four vials of crack cocaine to an undercover police officer during October 1992. The defendant's plea agreement was in full satisfaction of the offense of conviction, and pending charges for robbery, criminal possession of a weapon, and criminal possession of stolen property (No. 1993-37). Mr. Simms' parole revocation was based on a new arrest in Orange County, New York.

| | Date of Arrest | Conviction/ Court | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 25. | 09/01/95 (Age 23) | Attempted criminal sale of crack cocaine/ Orange County Court, NY (No. 470S-1995) | 10/27/95: 3 to 6 years custody; 09/02/98: Released on parole | 4A1.1(a) 3 |

The defendant, represented by counsel, pleaded guilty on September 29, 1995. Police reports reflect that on September 1, 1995, Mr. Simms possessed a zip lock bag containing crack cocaine, which he sold to an undercover police officer. The defendant's maximum parole supervision date is November 26, 2002. Parole violation action is anticipated following the defendant's federal sentencing.

## Criminal History Computation

26. Because the defendant committed the instant offense while on state parole on a sentence imposed on October 27, 1995, in Orange County, New York, two points are added pursuant to USSG § 4A1.1(d).                                     +2

27. Because the defendant committed the instant offense less than two years after his release from custody on September 2, 1998, one point is added under USSG § 4A1.1(e).          +1

28. The defendant has nine (9) criminal history points, which results in a criminal history category of IV.  USSG Chapter 5, Part A.

4

**PART C.   OFFENDER CHARACTERISTICS**

### Personal and Family Data

29.   Eddie Sims, Jr., was born in Manhattan, New York, on
December 27, 1971.  The defendant recalled that he had a
favorable upbringing in the Bronx, New York, and that he
resided at his parents' home as a teenager and young adult,
except when incarcerated.  The defendant recalled that his
parents separated when he was about twenty-one years old and
that he then lived with his mother.  The defendant relocated
to Harrisburg, Pennsylvania, in February 1999, and, at the
time of his arrest, was living with a girlfriend, Crystal
Prunty, in an apartment in suburban Harrisburg.

30.   The defendant's father, Eddie Sims, Sr., age fifty-three,
resides in the Bronx and is employed by Consolidated Edison.
The defendant's mother, Shirley (nee: Parker) Sims, age
fifty-three, resides at 2330 2nd Avenue, New York, New York,
and is employed by the New York City Transit Authority.
Siblings include Erica Sims, age twenty-eight, and Kenneth
Sims, age eighteen, who reside with their mother and are
students.  The defendant also informed that he has a half-
brother, Andre Parker, age thirty-two, who lives in West
Hempstead, New York, and is a real estate agent.  Shirley
Sims advised that she is supportive of the defendant, but
could provide no insight with regard to his offense.  She
related that after he was released from prison in September
1998, he lived at home and seemed to have a stable
employment.  The defendant's mother recalled that her son
seemed to have "disappeared" to some degree in early 1999,
and she was not fully aware of where he was living or what
he was doing until his arrest in February 2000.

31.   The defendant has not been married, but reported a stable
relationship with Crystal Prunty, age thirty, a Harrisburg
native, who is employed by the Pennsylvania Department of
Transportation.  The couple have known each other for about
one year and Ms. Prunty has regularly visited the defendant
at prison.  She informed the probation officer that Mr. Sims
likely committed the offense for the money.  She advised
that he has a close relationship with her two children,
Sheldon Jones, Jr., age nine, and Christian Jones, age
eight.  The defendant also informed that he has another
child, Robbie Ruff, age four, who resides with his mother,
Susan Ruff, in Columbia, South Carolina.  He has paid no
support for this child and has had no contact for years.
Mr. Sims also advised that he may have another child to a
former girlfriend, Jannarria Satterfield, a Long Island, New
York, resident.

### Physical Condition

32.   The defendant is 6'2" tall and weighs approximately 200
pounds.  He has brown eyes and black hair.  He reported
having a scar on his abdomen and the probation officer
observed a scar on his jaw.  Mr. Sims informed that this
scar is the result of a gunshot wound he received during
November 1999, when he was shot in the face with a small
caliber weapon.  Records from the Harrisburg Hospital,
Harrisburg, Pennsylvania, reflect that the defendant was
admitted on November 21, 1999, for a gunshot wound to the

5

face, which fractured his left mandible.  The wound was
treated and the defendant remained at the hospital for
observation purposes until November 23, 1999.  Mr. Sims
informed that his jaw still contains bullet fragments, but
that he has no permanent disability from the injury.  He
also informed that he had his appendix removed about five
years ago.  Mr. Sims is otherwise in good health.

### Mental and Emotional Health

33.    The defendant characterized his emotional health as stable
and he has no history of mental health treatment.

### Substance Abuse

34.    The defendant described himself as an occasional drinker,
who does not drink every day, but commented that when he
does consume alcoholic beverages, he drinks heavily.  He
does not consider his drinking to be a problem.  He recalled
some past use of marijuana, but averred that he has not
consumed the drug since 1992.  He also denied the use of
powder or crack cocaine.  Mr. Sims informed that he received
substance abuse counseling while in state custody in New
York.

### Educational and Vocational Skills

35.    The defendant recalled that he attended the Walton High
School, Bronx, New York, until about the tenth grade and
prior to his incarceration during 1992.  The school was
unable to verify the defendant's attendance.  Mr. Sims
informed that while he was in state custody, he completed a
General Education Development Program and obtained his high
school diploma in 1995.  The probation officer was unable to
verify this claim with state officials, however, Mr. Sims
and his mother informed that a copy of his diploma will be
obtained.

### Employment

36.    The defendant is in custody and is unemployed.  He was also
unemployed at the time of his arrest in February 2000, and
during 1999.  Mr. Simms advised that in 1998, he worked as a
forklift operator at Lindy's Cake Company, Astoria, New
York, and earned approximately $250 per week.  He recalled
that he quit this job in order to relocate to Harrisburg,
Pennsylvania.  The company has not responded to inquiries by
the probation officer, however, the defendant's Social
Security Administration wage records reflect employment at
Operative Cake Corporation, Long Island City, New York,
during 1998.  Records also reflect employment during 1995 at
Hotline Delivery, Inc., New York, New York.  Mr. Sims was
incarcerated during much of the 1990's and as a result was
unemployed.  Social Security records do reflect periodic
employment in retail stores and restaurants during 1990 and
1991.

**Financial Condition: Ability to Pay**

37. Based on interviews with the defendant, his mother, and girlfriend, and a review of the defendant's sworn financial statement and credit report, Mr. Sims has no significant assets or liabilities. The Government has identified no hidden assets. Mr. Sims's credit report only reflects a credit card (Gulf Oil) account with a balance of $13.

38. In consideration of the defendant's financial condition, he is unable to pay a fine immediately, but may be able to pay a fine below the applicable guideline range in installments if employed while incarcerated or while on supervised release.

**PART D.    SENTENCING OPTIONS**

**Custody**

39. **Statutory Provisions:** On each of Counts I and II, the maximum term of imprisonment is five (5) years. 18 USC § 1952.

40. **Guideline Provisions:** Based on a total offense level of twenty-nine and a criminal history category of IV, the imprisonment range is 121 to 151 months. However, because the statutory maximum penalty is five years on each count, the guideline sentence becomes 120 months (Zone D). USSG § 5G1.2(d).

**Impact of Plea Agreement**

41. Had the defendant been convicted on all counts of the Indictment, the estimated guideline custody range would be at least 121 to 151 months, and likely higher, dependent on the total drug amounts attributed to the defendant without the benefit of his cooperation agreement. Additionally, the defendant would have been subject to a mandatory minimum term of imprisonment of ten years, a $4,000,000 fine and a term of supervised release of at least five years on Count V.

**Supervised Release**

42. **Statutory Provisions:** Not more than three years on each count. 18 USC § 3583(b)(2).

43. **Guideline Provisions:** At least two years but not more than three years. USSG § 5D1.2(a)(2).

**Probation**

44. **Statutory Provisions:** The defendant is eligible for probation and the authorized term is not less than one nor more than five years. 18 USC § 3561(c)(1).

45. **Guideline Provisions:** Because the custody range is in Zone D of the Sentencing Table, probation is not authorized. USSG § 5D1.1, Application Note 2.

7

46. If a term of probation or supervised release is ordered, the Court shall, pursuant to 18 USC §§ 3563(a) and 3583(d), impose a condition that the defendant submit to drug testing, provided that this condition shall be suspended in the event there is a low risk of future substance abuse.

### Fines

47. **Statutory Provisions:** The maximum fine is $250,000, each count. 18 USC § 3571.

48. A special assessment of $100 on each count is mandatory. 18 USC § 3013.

49. **Guideline Provisions:** The fine range is $15,000 to $150,000. USSG § 5E1.2(c).

50. Pursuant to 18 USC § 3572(a)(6) and USSG § 5E1.2(d)(7), in determining the amount of the fine, the Court shall consider the expected costs to the Government of any term of probation, or term of imprisonment and term of supervised release imposed. The most recent advisory from the Administrative Office of the United States Courts dated April 14, 1999, suggests that an annual cost of $21,923.94 be used for imprisonment, $15,921.30 for community confinement, and $3,039.45 for supervision.

### Restitution

51. None.

## PART E.   FACTORS THAT MAY WARRANT DEPARTURE

52. The defendant's plea agreement provides for a possible motion for a downward departure pursuant to USSG § 5K1.1 and based on the defendant's substantial assistance to the Government. The probation officer has identified no other factors warranting a departure.

Respectfully submitted,

William C. Pool
Senior U.S. Probation Officer

Approved:

Edward J. Kosheba            Date
Deputy Chief U.S. Probation Officer

8

ADDENDUM TO THE PRESENTENCE REPORT

**United States District Court For The Middle District of Pennsylvania
United States v. Eddie Simms, Dkt. No. 1:CR-00-032-01**

## OBJECTIONS

By the Government

The Government has no objections.


By the Defendant

The defendant has no objections.



CERTIFIED BY:

William C. Pool
Senior U.S. Probation Officer


Approved:

Edward J. Mosheba                    9/15/00
Edward J. Mosheba              Date
Deputy Chief U.S. Probation Officer

9

(EXHIBIT 4)

1    testify in your behalf, you could testify if you wanted to,

2    although you wouldn't be required to either, and, again,

3    after all the evidence would be presented, the jurors would

4    have to all 12 vote to convict you of the charges.  Today if

5    you proceed as with the plea agreement and with the

6    superseding information entering a plea of guilty, then you

7    give up all of those rights.  You give up the right to go to

8    trial, to file any pretrial motions objecting to evidence,

9    the right to appeal the matter if the matter goes to verdict.

10    Do you understand that?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Do you want to enter into a plea

13    agreement today?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Mr. Behe, what is the plea agreement?

16            MR. BEHE:  Yes, Your Honor.  In exchange for Mr.

17    Simms agreeing to waive indictment and plead guilty to this

18    two count superseding information, the United States, at time

19    of sentencing, will move the Court to dismiss the currently

20    pending indictment in this matter which charges him with

21    multiple violations of Title 21 of the United States Code,

22    Section 841(a)(1).  Mr. Simms understands that the maximum

23    penalty for each count in the superseding information is

24    imprisonment for a period up to 5 years, a fine of $250,000,

25    a term of supervised release to be determined by the Court,

1    costs of prosecution, denial of certain federal benefits as

2    well as an assessment in the amount of $100.  So in essence

3    the maximum penalty that Mr. Simms faces would be double

4    that, up to 10 years, a fine up to $500,000 and special

5    assessments totaling $200.

6         Mr. Simms, through counsel, has indicated to the

7    United States that he accepts responsibility for these

8    offenses.  He has timely provided information to the United

9    States and timely told us of his intent to enter a plea of

10   guilty, and if he can adequately demonstrate this acceptance

11   of responsibility to the United States, which includes the

12   United States probation office, we would recommend that he

13   receive a 3 point reduction in his offense level for

14   acceptance of responsibility.  He does, however, understand

15   as well that whether or not Your Honor finds that he has

16   accepted responsibility or not is a matter outside of our

17   control, we can only make that recommendation to the Court,

18   and should Your Honor determine that he's not entitled to a 3

19   point reduction or not entitled to any reduction at all, that

20   would not provide him with a basis to move the Court to

21   withdraw his pleas of guilty.

22        The United States has retained the right to make a

23   recommendation that it considers appropriate based upon the

24   nature and circumstances of this case and specifically

25   reserves the right to recommend a sentence up to and

1    including the maximum sentence of imprisonment and a fine

2    allowable together with the costs of prosecution.

3    　　　　　Mr. Simms has agreed to cooperate with the United

4    States, and the terms and conditions of the cooperation that

5    will be required of him are contained in detail in the plea

6    agreement.  However, unlike other plea agreements, the United

7    States has not obligated itself to file a 5K1 motion in this

8    matter if he provides substantial assistance.

9    　　　　　In essence the terms of the plea agreement which

10   effectively cap his sentence at 10 years is in exchange for

11   his cooperation.  So he's getting the benefit up front by

12   pleading to these charges, as opposed to us not only letting

13   him plead to this, but obligating ourselves to further

14   consider filing a 5K1 motion, and I believe those are the

15   salient points of the plea agreement.

16   　　　　　THE COURT:  Mr. Simms, do you understand all of

17   that?

18   　　　　　THE DEFENDANT:  Yes, I do.

19   　　　　　THE COURT:  Is that your understanding of what the

20   plea agreement is?

21   　　　　　THE DEFENDANT:  Yes.

22   　　　　　THE COURT:  There is a written document on file

23   with the Court entitled plea agreement.  It's 13 pages long,

24   and it purports to bear your signature on page 13.  Would you

25   tell me if that is in fact your signature?

1              THE DEFENDANT:  Yes, it is.

2              THE COURT:  Did you have a chance to review the

3     agreement before you signed it?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you have any questions about it now?

6              THE DEFENDANT:  No, I don't.

7              THE COURT:  Did you sign it willingly?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Did anybody threaten, coerce you or

10    make any promises to you that are not stated in this document

11    or that were not stated on the record here in court this

12    morning?

13             THE DEFENDANT:  No.

14             THE COURT:  Has anybody promised you what your

15    sentence might be in this case?

16             THE DEFENDANT:  No.

17             THE COURT:  You have heard about the maximum

18    penalties that apply to your case.  Now do you know about the

19    sentencing guidelines that apply to your case?

20             THE DEFENDANT:  Yes.

21             THE COURT:  You do, okay.  So you understand that

22    in this case we know what the maximum penalty is, but we

23    don't know what the range of sentence is that I'll be able to

24    lawfully impose.  That's going to be computed after you leave

25    court today.  The probation office will interview you.

1    They'll find out the details of the offenses charged here and

2    a lot of information about your personal background.  All of

3    those things will go into a report to the Court.  You'll get

4    a copy before you come back to court.  Your lawyer can review

5    it.  You'll have a chance to make any additions to it,

6    corrections to it, so that when you come to court, there is a

7    complete sentencing report that contains all of the

8    information that I would need to know to impose a fair and

9    lawful sentence in this case.

10          At the conclusion of the report there is a

11    sentencing guideline calculation, and it informs the Court of

12    a range of months that would be appropriate and lawful in

13    your case.  In almost all cases I have to impose a sentence

14    in that range, but right now nobody knows what the range is

15    because the report hasn't been investigated or written.  So

16    when you enter a plea today, you don't know what the

17    guideline range is that applies to your case or what your

18    sentence might be.  Do you understand that and accept that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand what parole is and

21    that it does not apply to your case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If you're sentenced to incarceration,

24    you won't be able to be released on parole.  Do you

25    understand that?

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
---------------------------------X
```

EDDIE SIMMS,

        Petitioner,

VS.                           CASE NO.    00-CR-00032

UNITED STATES OF AMERICA,     DISTRICT COURT JUDGE
                          YVETTE KANE

        Respondent.

```
---------------------------------X
```

## AFFIDAVIT

### EDDIE SIMMS SWORE AND DEPOSE:

(1) That I was represented by Mrs. Lori. J. Ulrich, at the Sentencing Stage of my proceeding.

(2) That i emphatically requested counsel Mrs. lori j. Ulrich, to file a Direct Apeal on my behalf.

(3) That Mrs. Ulrich, stated I had no issues to appeal.

(4) That Mrs. ulrich, stated she would not file an appeal because it would use up judicial resources.

(5) That Mrs. Lori J. Ulrich, stated that the Government complied with Rule 35(b) and there was no error and no need to appeal.

(6) That the Petitioner would not have a right to appeal since the Petitioner plead guilty. This is what Mr. Ulrich stated.

(1)

(7) That Mrs. Ulrich stated that she would not file a appeal because everything in the plea agreement was correct.

Respectfully submitted

BY: *Eddie Simms*
Eddie Simms
(PRO-SE)
Reg. No.# 58128-053
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA.
17837

EXECUTED: OCTOBER 03, 2005.

**PETITIONER ACKNOWLEDGE THAT THESE STATEMENTS 1 THRU 6 ARE TRUE UNDER THE PENALTIES OF PERJURY.**

(2)

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------X

EDDIE SIMMS,                          :

       Petitioner,               :

                       :

                       :    CASE NO.  00-CR-00032

VS.                                   :

                       :    DISTRICT COURT JUDGE
                       :    YVETTE KANE

UNITED STATES OF AMERICA,             :

       Respondent.               :

------------------------------X

## AFFIDAVIT

EDDIE SIMMS SWORE AND DEPOSE:

(1) That I was represented at the Sentencing Stage and Plea Stage, by Mrs. Lori, J. Ulrich.

(2) That after my sentence of 120 months I requested that she file a Notice of Appeal and appeal issues on my behalf.

(3) That Mrs. ulrich, indicated that i did not have any issues to raise on appeal.

(4) Mrs. Ulrich, refused to adhere to my request and the Petitioner was unable to perfect an appeal.

(5) That the Petitioner instructed Mrs. Ulrich, to challenge the sentence of the drug quantity, and the Government refusal to file a Rule 35(b) motion on my behalf.

(1)

(6) The Sentencing Judge instructed counsel that the Petitioner had the right to appeal and requested Mrs. Lori J. Ulrich to appeal and she refused to file an appeal on the Petitioner's behalf.

Respectfully submitted

BY: _Eddie Simms_____
    Eddie Simms
    **(RPO-SE)**
    Reg. No.# 58128-053
    Federal Prison Camp
    P.O. Box 2000
    Lewisburg, PA.
    17837

**EXECUTED: OCTOBER 03 , 2005.**

**THE PETITIONER ACKNOWLEDGE THAT THESE STATEMENT'S 1 THRU 6 ARE TRUE UNDER THE PENALTIES OF PERJURY.**

(2)

October 3, 2005


Office of the Clerk
United States District Court
Middle District of Pennsylvania
Honorable Yvette Kane
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA.
17108

      **RE: United States v. Simms**
         **Case No. 00-CR-00032**

Dear Clerk of the Court:

    Please find inside three (3) copies of the Petitioner's
Motion for Leave to Amend Petitioner's Title 28 U.S.C. § 2255
to Vacate, and Set Aside, or Correct Sentence Pursuant to
Fed. R. Civ. P. 15(a).

Thank you very much.


                      Respectfully submitted

BY:     _Eddie Simms_____
                    Eddie Simms
                    Reg. No.# 58128-053
                    Federal Prison Camp
                    P.O. Box 2000
                    Lewisburg, PA.
                    17837

**Encl:**

EDDIE SIMMS
REG. NO. # 58128-053
FEDERAL PRISON CAMP
P.O. BOX 2000
LEWISBURG, PA.
17837

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HONORABLE YVETTE KANE
U.S. COURTHOUSE
228 WALNUT STREET
P.O. BOX 983
HARRISBURG, PA.
17108



UNITED STATES
POSTAL SERVICE

0000

17108

U.S. POSTAGE
PAID
LEWISBURG, PA
OCT 7/837
$0.00
AMOUNT
000-02034-11